## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**AURORA CASKET COMPANY, LLC**,
    Plaintiff,

    v.

**CARIBBEAN FUNERAL SUPPLY, CORP.**
*et al.*,
    Defendants.

Civil No. 16–2937 (GAG/BJM)

## ORDER AND OPINION

Aurora Casket Company, LLC ("Aurora") sued Caribbean Funeral Supply, Corp. ("Caribbean"), JR Quality, Inc. ("JR") and Rosa E. González-López ("González") for damages for breach of contract by Caribbean, JR, and González, and for declaratory judgments that Caribbean is not protected by the Puerto Rico Dealer's Act, 10 P.R. Laws Ann. §§ 278 *et seq*. ("Law 75"). Docket No. 20. Based on a forum-selection clause in the Product Supply Agreement (PSA) signed by both Caribbean and Aurora, Caribbean now moves to either dismiss Aurora's complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) or to transfer venue under 28 USC § 1404(a). Docket Nos. 26, 31. Aurora opposes. Docket No. 27. Pursuant to Local Rule 72(b)(1), Caribbean's motion was referred to me for disposition. Docket No. 29.

## BACKGROUND

The following facts are limited to those relevant to the matter before the court. Aurora is a company based in Indiana that manufactures caskets, cremation urns, keepsakes, and other products for funeral homes and families. Docket No. 20 at 2. Caribbean is a Puerto Rico-based company as is JQ. *Id*. González is a citizen of Puerto Rico. *Id*. at 2–3. In 2015, Caribbean and Aurora entered into the PSA, agreeing that Aurora would deliver its products to Caribbean who would then purchase and distribute them in Puerto Rico as well as surrounding Caribbean islands. *Id*. at 5–6. The PSA included a forum-selection clause stating that the parties agreed that "[a]ny litigation" between them would be brought "exclusively in an appropriate court of competent jurisdiction (state or federal) located in Dearborn County, Indiana." Docket No. 20–1 at 9. Aurora now alleges that although it has delivered all the products that Caribbean has ordered, Caribbean

has failed to perform its obligations under the PSA, including failing to pay Aurora for its products. Docket No. 20 at 9–10.

In 2014, JQ and Aurora allegedly entered into a contract that Aurora would provide JQ with a particular machine and in exchange JQ would buy certain products from Aurora. *Id*. at 7. JQ also agreed to pay Aurora in annual installments for the machine. *Id*. Aurora alleges that JQ has breached their contract by both failing to purchase products from Aurora and for failing to pay the installments due for the machine. *Id*. at 8.

In 2015, González allegedly agreed to pay Aurora $350,000 for inventory that she had received from Aurora. *Id*. The alleged promissory note is secured by a mortgage deed over real estate property in Puerto Rico. *Id*.

After Aurora brought suit against Caribbean in this court, Caribbean filed this motion to dismiss or transfer based on the forum-selection clause in the PSA. Docket Nos. 20; 26.

## APPLICABLE STANDARD

Typically, when a case is based on diversity jurisdiction, federal courts must apply state substantive law and federal procedural law. *See MARPOR Corp. v. DFO, LLC*, No. CV. 10–1312, 2010 WL 4922693, at *5 n.3 (D.P.R. Dec. 2, 2010) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)). Therefore, the question is whether the enforceability of a forum-selection clause is procedural or substantive. However, because "there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum selection clauses," the First Circuit "has declined to perform an *Erie* analysis when dealing with such clauses." *MARPOR Corp. v. DFO, LLC*, No. CV. 10–1312, 2010 WL 4922693, at *5 (D.P.R. Dec. 2, 2010) (citing *D.I.P.R. Mfg., Inc. v. Perry Ellis Int'l, Inc.*, 472 F. Supp. 2d 151, 155 (D.P.R. 2007)); *see Lambert v. Kysar,* 983 F.2d 1110, 1116–17 (1st Cir. 1993) ("In cases where federal law and state law coincide on the issue in question, it is unnecessary for the court to make a full Erie analysis."). Instead, given the similarity between federal and Puerto Rico law, "the First Circuit has applied federal common law when interpreting [forum-selection clauses] in a diversity context. *D.I.P.R. Mfg., Inc.*, 472 F. Supp. 2d at 154 (citing *Silva v. Encyclopedia Britannica Inc.,* 239 F.3d 385 (1st Cir. 2001)).

In the First Circuit, a motion to dismiss based on a forum-selection clause is treated "as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Claudio-De Leon* v. *Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014) (quoting *Rivera* v. *Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009)). Caribbean filed such a motion here, albeit under 12(b)(3), but alternatively requested a transfer under § 1404(a). Although the Supreme Court "explicitly declined to express a view as to whether a Rule 12(b)(6) motion is a proper alternative" to enforce a forum-selection clause, its holding in *Atlantic Marine Co., Inc.* v. *U.S. District Court*, 134 S. Ct. 568 (2013) is "emphatic that a motion to transfer under Section 1404(a) was the appropriate mechanism" when the chosen forum is within the federal system. *Caribbean Rests., LLC* v. *Burger King Corp.*, 23 F. Supp. 3d 70, 75 (D.P.R. 2014). Accordingly, "the court will now treat . . . [Caribbean]'s motion as a motion to transfer under Section 1404(a) and analyze its request under the standard set forth in *Atlantic Marine*." *Id.*; *see also Antilles Cement Corp. v. Aalborg Portland A/S*, 526 F. Supp. 2d 205, 207 (D.P.R. 2007) ("[W]here transfer to another federal jurisdiction is viable, the proper remedy is not dismissal of the complaint but rather a determination of whether transfer is proper by focusing instead on the requirements established in § 1404(a)." (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988))); *Diaz Morales* v. *Royal Caribbean Cruises, Ltd*., 419 F. Supp. 2d 97, 101 (D.P.R. 2006) (defendant's motion to dismiss denied and case transferred to a district court in Florida, the appropriate venue).[1]

As a motion to transfer is a non-dispositive matter, it is appropriate for me to resolve the motion through an order as opposed to a report and recommendation to the presiding district judge. *See* 28 U.S.C. § 636(b)(1)(A); *Caguas Lumber Yard Inc. v. Ace Hardware Corp.*, 827 F. Supp. 2d 76, 78 (D.P.R. 2011), *aff'd,* No. CIV. 11–1684 GAG, 2011 WL 5837808 (D.P.R. Nov. 21, 2011) (change of venue or transfer to another district is a non-dispositive matter); *BMJ Foods Puerto*

---

[1] Although Caribbean argues that the case should be dismissed rather than transferred because Aurora had not specified whether it preferred the state or federal court in Dearborn County, Indiana, Aurora has since clarified in its opposition to Caribbean's motion that, should the motion be granted, Aurora would like the case transferred to the federal court in Dearborn County, which is the United States District Court for the Southern District of Indiana. *See* Docket No. 27 at 8 n.5.

*Rico, Inc. v. Metromedia Steakhouses Co., L.P.*, 562 F. Supp. 2d 229, 231 (D.P.R. 2008) (motion to transfer is non-dispositive). Severance of claims is also a non-dispositive matter and as such is appropriate for decision by a magistrate judge. *See U.S. v. Schneider,* 2007 WL 2407060, *1 (E.D.Wis. Aug. 20, 2007) ("A magistrate judge has authority to decide nondispositive motions such as motions to sever."); *Wat Bey v. City of New York*, No. CV 99-3873, 2007 WL 2012421, at *1 (S.D.N.Y. July 11, 2007); *Cruzan Terraces, Inc. v. Antilles Ins., Inc.*, 138 F.R.D. 64, 65 (D.V.I. 1991) ("Granting severance . . . is not dispositive of any of the claims).

## DISCUSSION

Section § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This transfer statute "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atlantic Marine*, 134 S. Ct. at 580. "The decision to transfer should be made on a case-by-case basis. In its analysis, a court must balance the convenience of the parties, the convenience of the witnesses, and public interest factors which are generally subsumed under the category 'the interest of justice.'" *Outek Caribbean Distributors, Inc. v. Echo, Inc.*, 206 F. Supp. 2d 263, 266 (D.P.R. 2002) (quoting *Stewart*, 487 U.S. at 29–31). Public-interest factors include "familiarity with the governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts." *Johnson v. VCG Holding Corp.*, 767 F. Supp. 2d 208, 217 (D. Me. 2011).

However, this framework is different when there is a valid forum-selection clause representing the parties' prior agreement of forum. In such cases, "the Supreme Court held . . . that clause should be given controlling weight in all but the most exceptional cases, and a district court should ordinarily transfer the case to the forum specified in that clause." *Caribbean Rests., LLC*, 23 F. Supp. 3d at 75. Specifically, when the court is considering enforcing a forum-selection clause, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection

clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . . Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Caribbean Rests.*, 23 F. Supp. 3d at 76 (quoting *Atlantic Marine*, 134 S. Ct. at 582). In addition, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atlantic Marine*, 134 S. Ct. at 575. Consequently, "the party acting in violation of the forum-selection clause . . . must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 583 (quoting *Stewart,* 487 U.S. at 33); *see Caribbean Rests.*, 23 F. Supp. 3d at 76 (the party acting in violation of the forum-selection clause does not bear the burden of showing that the private interests disfavor transfer only because the forum-selection clause is read to make all private interests favor transfer).

Accordingly, the first question is whether there is a "contractually valid forum-selection clause" and, if there is, the second question is whether Aurora can establish that the "public-interest factors overwhelmingly disfavor a transfer." *Atlantic Marine*, 134 S. Ct. at 581 n.5; 583.

Here, Aurora argues that the forum-selection clause is invalid because some of its claims are based on Law 75, which governs dealer's contracts in Puerto Rico. In relevant part, Law 75 states, "Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void." 10 L.P.R.A. § 278b-2. Although neither party actually addresses whether Caribbean qualifies as a dealer as defined by the statute, I will assume for the purposes of this motion that Caribbean is in fact a dealer whose contract with Aurora would fall within the jurisdiction of Law 75.

"Unfortunately for the Plaintiff, this court has already rejected the argument they now advance 'even when the case sets forth claims under [Law] 75.'" *Caribbean Rests.*, 23 F. Supp. 3d at 78 (quoting *D.I.P.R. Mfg., Inc.*, 472 F. Supp. 2d at 155); *see MARPOR Corp.*, 2010 WL 4922693, at *5 (enforcing forum-selection clause in Law 75 case); *Puerto Rico Surgical Techs., Inc. v.*

*Applied Med. Distribution Corp.*, No. CV. 10–1797, 2010 WL 4237927, at *3 (D.P.R. Oct. 26, 2010) (same); Diaz-Rosado v. Auto Wax Co., No. CV. 04–2296, 2005 WL 2138794, at *2 (D.P.R. Aug. 26, 2005) (same); *Outek Caribbean Distributors, Inc.*, 206 F. Supp. 2d at 270 (same); *Maxon Eng'g Servs., Inc. v. United Sciences, Inc.*, 34 F. Supp. 2d 97, 100 (D.P.R. 1998) (same); *Stereo Gema, Inc. v. Magnadyne Corp.*, 941 F. Supp. 271, 274–77 (D.P.R. 1996) (same). As a result of the Puerto Rico Supreme Court's adoption of federal standards on forum-selection clauses in *Unisys Puerto Rico v. Ramallo,* 128 D.P.R. 842 (1991), this court has found that the lack of "conflict between federal common law and Puerto Rico law regarding the enforceability of forum-selection clauses" means that forum-selection clauses such as the one at hand do "not contravene an important public policy of Puerto Rico." *Puerto Rico Surgical*, 2010 WL 4237927, at *2–3 (D.P.R. Oct. 26, 2010) (quoting *Silva*, 239 F.3d at 386 n.1); *see MARPOR Corp.*, 2010 WL 4922693, at *5 (granting the defendants' motion to dismiss for improper venue because "the Supreme Court of Puerto Rico has adopted federal standards on forum selection clauses," which "therefore eliminates any reservations that might exist as to whether or not transferring venue would violate Puerto Rico public policy or cause any *Erie*-type difficulties").

Aurora cites to *Caguas Lumber* for the proposition that Law 75 does in fact prevent enforcement of forum-selection clauses that move cases out of Puerto Rico courts. *See* Docket No. 27 at 4. However, this court chooses not to follow the *Caguas Lumber* court for several reasons. First, the court in *Caguas Lumber* relied on the First Circuit's decision in *Conbraco*, which addresses a different law's prohibition of forum-selection clauses and consequently, as the *Caguas Lumber* court acknowledges, is not binding on courts addressing Law 75. *See Caguas Lumber Yard Inc*, 827 F. Supp. 2d at 83. Second, since the *Caguas Lumber* decision, this district has once again found that "[t]he fact that a Puerto Rico statute prescribes the applicability of forum selection clauses does not mean that the Court will automatically disregard the parties' freely-negotiated contractual obligations." *Caribbean Rests.*, 23 F. Supp. 3d at 78 (quoting *Diaz-Rosado,* 2005 WL 2138794, at *2). Third, this district's decision in *Caribbean Restaurants* is more persuasive because it is the only decision analyzing this issue in light of the Supreme Court's new

admonishment that contractually valid forum-selection clauses "should be given controlling weight in all but the most exceptional cases." *Caribbean Rests.*, 23 F. Supp. 3d at 75 (quoting *Atlantic Marine*, 134 S. Ct. at 580). And lastly, the purpose of Law 75 is to remedy "the abusive practices of suppliers who arbitrarily eliminated distributors after they had invested in the business and had successfully established a market in Puerto Rico for the supplier's product or service." *Re-Ace, Inc. v. Wheeled Coach Indus., Inc.*, 363 F.3d 51, 57 (1st Cir. 2004). As Caribbean, the Puerto Rico distributor that Law 75 protects, is not seeking protection of a Puerto Rico forum, nothing in this case implicates the policies behind Law 75 in a way that may tilt the scale towards keeping this case in Puerto Rico.

"The record here is devoid of any allegation or evidence that the clause in dispute was the result of fraud or overreaching[, and Aurora] does not dispute that [it] freely chose to adopt the contracts." Thus, the forum-selection clause is contractually valid.

The public-interest factors that courts look to when deciding a motion to transfer under § 1404(a) are "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine*, 134 S. Ct. at 581 n.6 (citations omitted). Here, again, Aurora bears "the burden of showing why the court should not transfer the case" to Indiana. *Id.* at 582. Aurora, however, instead focuses on "the convenience of the parties and witnesses; . . . the availability of documents; . . . the possibility of consolidation . . . and the order in which the district court have changed jurisdiction." *See* Docket No. 27 at 7. As factors related to the convenience of the parties, including the availability of documents and "the need to keep litigation consolidated" are private interest factors, they are not relevant when there is a forum-selection clause. *See Taxes of Puerto Rico, Inc. v. TaxWorks, Inc.*, 5 F. Supp. 3d 185, 190 (D.P.R. 2014).

In analyzing the public-interest factors, the court's congestion arguably weighs in favor of transfer while the interest in localized controversies decided at home and in a forum that is at home with the law likely weighs against transfer. In terms of court congestion, it is well known that

"[t]he District of Puerto Rico has one of the most congested criminal and civil dockets in the nation," which would encourage transfer. *Caribbean Rests.*, 23 F. Supp. 3d at 79 (quoting *Miranda-Lopez v. Figueroa-Sancha,* 943 F. Supp. 2d 276, 279 (D.P.R. 2013)); *see Marquez v. Drugs Unlimited, Inc.,* 737 F. Supp. 2d 66, 68 (D.P.R. 2010) ("In this extremely congested district, both on the civil and criminal dockets, it is thus extremely important for the court to effectively manage its caseload."). Conversely, Caribbean's alleged actions that caused it to breach its contract with Aurora happened here in Puerto Rico, which makes this a localized controversy. *See* Docket No. 20. But, while Puerto Rico courts are likely more familiar with Law 75, "this court has found in the past that transferee courts are fully capable of resolving claims brought under [Law] 75 pursuant to Puerto Rico law." *BMJ Foods Puerto Rico, Inc.*, 562 F. Supp. 2d at 234; *see Outek Caribbean Distributors, Inc.*, 206 F. Supp. 2d at 269 ("[C]ourts in one forum are oftentimes called upon to make rulings based upon the laws from another forum. Moreover, a transfer in the present case would not be the first time that a court outside of Puerto Rico has heard a Law 75 claim."). The public-interest factors appear to be neutralize each other. More importantly, as Aurora has not developed any arguments addressing these public-interest factors, it has not met its burden of proof to show that they weigh in favor of denying the motion to transfer.

Finally, it is necessary to consider the fact that two of the defendants in the present case, JR and González, are not parties to the forum-selection clause that binds Aurora and Caribbean. Recently the Third Circuit adopted a modified version of the Fifth Circuit's framework for how courts should approach motions to transfer under a forum-selection clause when not all the parties are bound by the forum-selection clause. *In re: Howmedica Osteonics Corp*, 867 F.3d 390 (3d Cir. 2017) (discussing *In re Rolls Royce*, 775 F.3d 671 (5th Cir. 2014)).

The Third Circuit laid out a four step framework: first, the court must recognize the forum-selection clause and acknowledge that "'[i]n all but the most unusual cases,' claims concerning those parties [bound by the forum-selection clause] should be litigated in the fora designated by the clauses." *Id*. at 404 (quoting *Atlantic Marine*, 134 S.Ct. at 583). "Second, the court performs an independent analysis of private and public interests relevant to non-contracting parties, just as

when adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses." *Id*. If the results in step one and step two point to the same forum, then the court should end the inquiry and "allow the case to proceed in that forum." *Id*. If, however, steps one and two point to different districts, then the third step is to consider factors that may affect severing the claims such as preserving "federal diversity jurisdiction" or "cur[ing] personal jurisdiction, venue, or joinder defects." *Id*. The court should then "sever and transfer claims as appropriate to remedy jurisdictional and procedural defects." *Id*. Finally, the fourth step is for the court to exercise its discretion "in choosing the most appropriate course of action" while considering "efficiency interest in avoiding duplicative litigation, taking into account case management techniques that can reduce inefficiencies accompanying severance, as well as any other public interests that may weigh against enforcing a forum-selection clause. On the other hand, the court also considers the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests." *Id*. at 405. (internal citations omitted).

Having already completed the first step acknowledging the controlling effect of a forum-selection clause, the next step is to consider the public and private interests of González and JR. Although I do not have information from either González or JR on their understanding of these factors, Aurora's complaint makes it clear that they point to keeping the claims against González and JR in Puerto Rico. Both defendants are Puerto Rico residents charged with violating contracts that were meant to be performed in Puerto Rico. Docket No. 20 at 2–3; 7–9. As such, the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive" weigh in favor of keeping Aurora's claims against González and JR in Puerto Rico. *Atlantic Marine*, 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, n. 6 (1981)). The public-interest factors are largely the same as apply to the claim against Caribbean, which I already found to be neutral. However, there is also a presumption in favor of the Aurora's choice of forum of Puerto Rico because there is no

forum-selection clause. Therefore, the analysis weighs heavily in favor of keeping the claims against González and JR in Puerto Rico.

As the results of steps one and two are two different forums, Indiana and Puerto Rico, the third step is to consider factors affecting severing the claims. Although JR currently has a motion to dismiss for improper joinder pending before the court, *see* Docket No. 25, that motion has not yet been decided; there are no other threshold issues related to severance raised by any party. The fourth and final step, then, is to consider efficiency interests as well as prejudice to the non-contracting parties. Here, the two options are to keep all of Aurora's claims in Puerto Rico or to sever and transfer Aurora's claims against Caribbean to Indiana. On the surface, the efficiency interests seem to weigh against transfer. However, Aurora's claims against Caribbean are entirely separate from its claims against JQ and González: Aurora is suing for breach of three different contracts, each entered into with a different defendant. Although the purpose of the contracts, from Aurora's perspective, was likely similar—developing a market for their products in Puerto Rico and the larger Caribbean area—the evidence needed to prove contract formation or breach of the contract would logically be different for each one. Furthermore, any "risk of duplicative litigation . . . can be reduced or eliminated with 'procedural mechanisms ..., such as common pre-trial procedures, video depositions, stipulations, etc.,'" *Howmedica*, 867 F.3d at 409 (quoting *Rolls Royce*, 775 F.3d at 681). "Although there may be some overlap in legal issues, we are confident that each court can become familiar with the applicable state law." *Id*. at 410 (internal quotations omitted). Finally, there is no apparent detriment to either non-contracting party's private interests if the claims against Caribbean are severed because each defendant must defend its actions under its own contract. Aurora alleges that JR and Caribbean are affiliated companies and that González did or does have a management role in JR. However, as Aurora has provided no further argument on this point, and as JR, as already alluded to, filed a motion stating that it wishes for the claims to be severed, I cannot find that the private interests of González and JR against transferring the claims related to Caribbean are so strong as to qualify as extraordinary circumstances that could overcome the presumptive enforcement of the forum-selection clause. Severance and transfer of

Aurora's claims against Caribbean "satisfies *Atlantic Marine'*s prescription that forum-selection clauses should be enforced '[i]n all but the most unusual cases,' accounts for private and public interests relevant to non-contracting parties, . . . and promotes efficient resolution of" Aurora's claims against all defendants without unduly prejudicing the interests of JQ and González. *Id*. at 411 (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Aurora's claims against Caribbean are severed, and Caribbean's motion to transfer is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of November, 2017.

*S/ Bruce J. McGiverin*

BRUCE J. MCGIVERIN
United States Magistrate Judge